The People of the State of Illinois, Defendant in Error,
v. Walter Kiley, Plaintiff in Error.

Gen. No. 34,478.

347

Opinion filed April 15, 1931.

ELLIODOR M. LIBONATI, for plaintiff in error; EVERETT JENNINGS and HAROLD SULLIVAN, of counsel.

JOHN A. SWANSON, State's Attorney, for defendant in error; OTHO S. FASIG, HENRY T. CHACE, JR. and

EDWARD E. WILSON, Assistant State's Attorneys, of counsel.

MR. JUSTICE FRIEND delivered the opinion of the court.

Walter Kiley, James Giano and Anthony Di'Giovanni were convicted at the July Term 1929 of the criminal court of Cook county for the crime of conspiracy to manufacture a bomb and to destroy certain property. Kiley's punishment was fixed by the jury at imprisonment in the penitentiary and a fine of $2,000. After overruling his motions for a new trial and in arrest of judgment, the court sentenced Kiley to the penitentiary for a term fixed by statute and ordered him to pay the sum of $2,000 and the costs of the trial. Neither Giano nor Di'Giovanni moved for a new trial. This writ of error is prosecuted on behalf of Kiley to reverse the judgment entered against him.

As grounds for reversal defendant urges that (1) the alleged confessions of Giano and Di'Giovanni made subsequent to their arrest were involuntary and inadmissible and their introduction in evidence was prejudicial to defendant's rights; that (2) the evidence fails to show guilt beyond a reasonable doubt; that (3) substantial error was committed by the court in giving and refusing instructions to the jury.

Upon motions made by defendants to suppress and exclude the alleged confessions of Giano and Di'Giovanni on the ground that they were obtained by duress, and to exclude articles obtained by police officers from the home of Di'Giovanni and the automobile in which he and one Venuti were riding when arrested, the court, out of the presence of the jury, heard evidence bearing upon the defendant's motions. The essential facts disclosed by this examination show that shortly after 12 o'clock p. m. on February 4, 1929, Daniel F. Healy and his police squad arrested Di'Giovanni and

one Venuti who were riding in the former's car just south of Twelfth Street on Halsted Street, in the City of Chicago; that when they searched Di'Giovanni's automobile they found therein a package containing a gas pipe, caps, fuses and some powder, which, upon analysis, was shown to be of a highly explosive nature; that upon interrogation Di'Giovanni stated to Healy that the paraphernalia found in the package was a bomb to be laid at 8144 Blackstone Avenue; that Di'Giovanni had received the name and address of the owner of the premises on a piece of paper, but had prior thereto thrown it away; that he was hired to lay the bomb by Giano, known as Blackie, one of the defendants, who was employed as clerk in a drug store at Buena Avenue and Broadway, in the City of Chicago; that Giano had introduced him at the drug store to the defendant, Kiley, whom he remembered as a stout fellow with reddish hair; that Kiley had paid Giano $50 on account for services, and was to pay an additional $50 after the bombing; that upon receiving this information from Di'Giovanni the officers left instructions to have Di'Giovanni taken to the detective bureau, and hurried to the Flanders Hotel, where Giano was found in the lobby and Kiley in his room, and both were arrested and brought to the detective bureau; that while there, and later on the same day at the State's Attorney's office, Giano and Di'Giovanni made statements, in the presence of Kiley, implicating him in the conspiracy. On both occasions Kiley sat by, heard the statements and remained silent. When interrogated by Healy he refused to discuss the matter. At the State's Attorney's office, Charles Mueller, who conducted the examination of the defendants Giano and Di'Giovanni, first fully advised Kiley of his constitutional rights, and then asked him whether he wished to make a statement, to which

Kiley replied, "I don't care to talk about anything unless I have counsel."

The record contains several hundred pages of evidence adduced upon the motions to suppress the confessions and other evidence. Numerous witnesses testified in great detail as to the circumstances under which Giano and Di'Giovanni made statements to Healy in the presence of officers Greer, Kelly and Quiller, at the time of the arrest, later at the detective bureau, and finally in the office of the State's Attorney. Giano and Di'Giovanni testified that they were beaten, tortured and threatened. They claim to have sustained bruises and injuries and to have been otherwise mistreated by various police officers before they were finally taken to the State's Attorney's office. These charges were denied by police officers, court attaches and others who stated that no threats, force or violence was exerted to induce the statements, but that the same were freely and voluntarily made. Judge Daniel P. Trude, among others, was called as a witness. He testified that on February 6, 1929, there appeared before him as judge of the municipal court, the defendants Giano, Di'Giovanni and Kiley; that one of them, Di'Giovanni, complained of violence used by members of the police department; that he had Di'Giovanni taken to his chambers and stripped for examination; that the defendant displayed a bruise on the right side of his body about the size of a quarter, which appeared to the witness to have been made four or five days prior thereto, but that he saw no bruises on the defendant's back or on other parts of his body as Di'Giovanni contended.

The evidence is too voluminous to permit of a summary in detail. It suffices to say that the charges made by defendants are denied by numerous other witnesses and that the evidence relative to the circumstances under which the statements are alleged to have been

made is extremely conflicting. The court heard all the evidence patiently, and after a careful and lengthy examination finally overruled the motions to suppress. Upon the hearing before the jury the defendants Giano and Di'Giovanni denied having made any statements, and repeated the charges of violence attributed to the police officers prior to their examination at the State's Attorney's office. The jury heard the testimony of all these witnesses. Whether the confessions are of such a character as to entitle them to be considered by the jury is a question for the court, and the rules to be invoked by the court in determining this preliminary question are well settled in this State.

In determining the competency of the confessions as a preliminary question, the court cannot, of course, disregard the evidence of defendants that the confessions were forced from them by torture or physical violence and threats, but where the evidence is contradictory, as here, all the charges of violence being denied, the decision of the court admitting the confessions will not be reversed unless it is manifestly against the weight of the evidence. It was so held in *People v. Guido,* 321 Ill. 397, where it was also stated that it was not necessary that the court "should be convinced, beyond a reasonable doubt, of their voluntary character," and then proceeded in its opinion to say, "though there may be evidence of threats or promises made to induce the making of the confession, if there is sufficient in the facts and circumstances proved to show that the confession was voluntarily made there can be no abuse of judicial discretion in allowing it to be presented to the jury."

It is urged by defendant, however, that the court should not have permitted evidence of the confessions to be presented to the jury until the State had examined every police officer and those present when the confessions were made, so that the full facts might be

disclosed. This was held to be unnecessary in the case of *People v. Fox,* 319 Ill. 606, where the court said:

"While the burden of showing that no improper inducement existed when the confession was made is upon the prosecution, it is not necessary for the prosecution to produce all its evidence before any evidence is produced on behalf of the accused. After the State has made a *prima facie* case, then the burden of going forward with the proof properly shifts to the accused. . . . In order to meet its burden of showing the confession to be voluntary, the prosecution must show by its witnesses the circumstances under which the confession was made, with sufficient detail to enable the court to determine the question."

The procedure outlined in the foregoing opinion was substantially followed in the case before us. The prosecution introduced sufficient evidence to make a prima facie case, then followed the evidence of threats, violence and duress by the testimony of defendants, and thereafter the State produced evidence in rebuttal of defendants' statements. The court carefully examined into all of the facts and circumstances necessary for its decision as to whether or not the confessions were admissible. Healy, Schumacher, who was also a police officer, and others categorically denied the contentions of defendants as to threats, violence and duress, and their testimony is corroborated by Judge Trude, who refuted Di'Giovanni's statements as to injuries, which, if inflicted as contended for, would necessarily have still been visible 36 hours after arrest. We have carefully examined the record and are satisfied that the ruling of the trial court should not be disturbed as being against the manifest weight of the evidence.

Moreover, it cannot be contended that the ruling of the court was prejudicial to Kiley. His rights were more fully safeguarded by the court's instruction to

the jury that the confessions were not admissible as to him than the law requires. The fact that he remained silent, both at the detective bureau and later during the examination in the State's Attorney's office, and failed in both instances to deny incriminating statements made in his presence by Giano and Di'Giovanni, made the confessions binding and admissible in evidence against him, and the court might well have so qualified the instruction. It was said in *People v. Buckminster,* 274 Ill. 435: "It has long been the settled rule of law that the voluntary confession of one person made after the commission of the crime cannot be admitted against a co-defendant unless made in the presence of the co-defendant and assented to by him."

The doctrine enunciated in the *Buckminster* case and authorities there cited was approved in *People v. Cardinelli,* 297 Ill. 116, wherein the court stated: "The principle upon which statements made in the presence of one accused of crime are admitted in evidence against him is, that his silence when he might and naturally would deny the accusations of guilt if they were untrue is regarded as an acquiescence of their truth and an implied admission of guilt."

It is next urged that the evidence is insufficient to show Kiley's guilt beyond a reasonable doubt. The indictment charges in apt words that the defendants conspired to destroy or injure a building at 8144 Blackstone Avenue, in the City of Chicago. While the *corpus delicti* may not be proved by an extrajudicial confession alone, it may be considered in connection with the other evidence to establish a *corpus delicti,* and it is sufficient if evidence of other facts and circumstances so fully corroborates the confession as to show the commission of the offense beyond a reasonable doubt. (*People v. Hein,* 315 Ill. 76.) We believe that there is ample proof in this record to prove the conspiracy charged in the indictment. Di'Giovanni

was found in an automobile containing a powder bomb and fuse. The powder was analyzed and shown to be of an explosive character. Di'Giovanni was to be paid for planting the bomb at 8144 Blackstone Avenue the sum of $100, $50 of which was to be given him by Giano and the balance to be paid by Kiley after the service was rendered. The evidence discloses that Kiley had agreed to pay $100 to have the premises bombed. He made this contract with Di'Giovanni through Giano after a conversation in the drug store at Buena Avenue and Broadway. Kiley and Di'Giovanni were brought together through Giano as an intermediary, who paid part of the consideration to Di'Giovanni. Fifty dollars was found on Di'Giovanni's person when apprehended. Aside from the confessions there is the undisputed evidence that Kiley and Giano were arrested by the police in the same hotel. Giano admitted that he knew Kiley and Di'Giovanni. There is also the evidence of Charles Bundo that he had known Kiley for about two years; that he was employed in the Ideal Bond & Service Corporation; that he was asked by Kiley to intercede with one Koerber for the purpose of having the latter "lay off." Koerber testified that he was in business with Kiley under the name of Ideal Bond & Service Corporation, of which he was president; that Koerber told Kiley that the business of the corporation was a "racket" and that he, Koerber, had decided to retire from business; that Koerber lived at 8144 Blackstone Avenue, which was the place that the conspirators had undertaken to bomb. All of this evidence, together with the statements of defendants made in Kiley's presence and undenied by him, was submitted to the jury, together with the denials of the defendants Giano and Di'Giovanni that such statements had been made. It was the function of the jury to pass upon the question of fact whether the conspiracy, as charged, ex-

isted. They had an opportunity to hear all the witnesses and judge of their credibility. We are of the opinion that this evidence amply sustains the verdict finding the defendant, Kiley, guilty beyond a reasonable doubt.

Lastly defendant complains of instructions given and refused by the court. On request of the State's Attorney the court gave to the jury the following instructions:

"The court instructs the jury, as a matter of law, that, to constitute the offense charged in this case, the intent alleged in the indictment is necessary to be shown, but that direct and positive testimony is not necessary to prove the intent; it may be inferred from the facts and circumstances shown by the evidence." This instruction is criticized on the ground that the jury and not the court must pass on whether or not intent had been proved, and *People v. Johnson,* 333 Ill. 469, is cited in support of defendant's contention. While it is true that the instruction given in the *Johnson* case was held to be erroneous, it was not because the instruction *per se* was improper, but because the facts, as disclosed by the evidence, did not warrant the giving of the same. It also appears in the *Johnson* case that the judgment was reversed because of error committed by the cross-examination of a court's witness, and the giving of other erroneous instructions.

It is further urged that the court erred in refusing an instruction offered on behalf of defendant which informed the jury that where an original confession is involuntary, subsequent confessions by the same defendant are inadmissible unless the influence which induced the original confession has been withdrawn. This instruction relates to the several statements made by the defendants. It is contended on behalf of Kiley that if Giano's and Di'Giovanni's first confessions

made at the police station and the detective bureau, respectively, were induced by threats and violence, sufficient time did not elapse between these occurrences and their statements made at the State's Attorney's office to remove the influence that induced them and to render the latter confessions admissible in evidence. However, Kiley's contention is predicated on the assumption that the original confessions were inadmissible, and in view of the court's ruling as to their admissibility and our finding as to the propriety of this ruling, we believe that the refusal of the instruction tendered by the defendant was proper.

There being no reversible error, the judgment of the criminal court will accordingly be affirmed.

*Affirmed.*

Wilson, P. J., and Hebel, J., concur.